UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DENNIS FLORER,

        Plaintiff,

v.

DEVON SCHRUM, CARLA SCHETTLER, ALAN WALTER, RICH MOSS, STEVE SUNDBERG, RON KNIGHT, CHRIS BOWMAN, STEVE SINLAIRE, STEVE BARKER, ALAN KUNZ, JOHN CAMPBELL, WILL PAUL, S. SUKERT, KURT GRUBB, CANDICE GERMOAU, JULIE SMITH, SANDY DIIMMEL, AL MOSLEY, MILES LAWSON, RON FRAKER, JOHN OYEN, DREW WALTMAN, GARY PIERCE, MARK KUCZA, DON HOLLBROOK, GERMAINE BENSON, LINDA BELANGER, ELDON VAIL, LAURA WYCKOFF-MEYER, GUSTAVE MEZA, ALAN ROOKSTOOL, EDUARDO MICHEL, (FNU) DANIEL, ERIC JACKSON, and BERNIE WARNER,

        Defendants.

No. C11-5135 BHS/KLS

**ORDER REGARDING DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

Before the Court is Defendant's Motion for Protective Order. ECF No. 88. Having reviewed the motion, Plaintiff's response (90), Defendants' reply (ECF No. 91), and balance of the record, the Court finds as follows:

**BACKGROUND**

Plaintiff Dennis Florer is currently incarcerated at the Monroe Corrections Complex (MCC) in Monroe. This matter is proceeding on Plaintiff's Amended Complaint. ECF No. 44. Plaintiff is suing several Department of Corrections employees of the Washington Corrections

ORDER - 1

Center (WCC), Clallam Bay Corrections Center (CBCC), and Washington State Penitentiary (WSP) for violation of his due process, First and Eighth Amendment rights, and for retaliation.

Plaintiff alleges that in March of 2011, Defendants transferred him to WSP's gang unit even though they knew of the high level of violence that existed therein and knowing that he would be assaulted. ECF No. 44, pp. 18-19. He claims that Defendants made this transfer in retaliation for his "historic filings of about 200 grievances and 7 lawsuits since 2004 against WSP and CBCC prison employees." *Id.* On March 6, 2011, Plaintiff alleges that he was assaulted by a WSP gang unit inmate while WSP guards Wyckoff-Meyer, Meza, Rookstool, Michel, Daniel, and two John Does failed to prevent the assault. *Id.*, p. 19. Plaintiff alleges that the assault took place in front of the unmanned officer's station on the east side of F gang unit and that there was no guard within the east side of the unit either prior to or during the assault. *Id.*

On March 19, 2012, this Court entered an order granting, in part, Plaintiff's Motion to Compel discovery. ECF No. 82. Specifically, the Court ordered Defendants to supplement a number of interrogatory responses and to produce a surveillance video, marked as "DVD Evidence Case No. 211-177, Evidence Locker No. 34." *Id.* at 5, 9. Defendants now seek a protective order limiting the manner in which the surveillance video is to be produced. They propose that a copy not be given to Plaintiff, but that Plaintiff be allowed only to view the video during his law library access time.

Defendants argue that providing a copy of the video presents two important security concerns. The first is that the plastic disc on which the video is produced can be broken or sharpened into a dangerous cutting or stabbing weapon. The second, and more pressing security concern, according to Defendants' counsel, is that Plaintiff could make and distribute copies of

ORDER - 2

the video or allow other offenders to view the video. Plaintiff will have access to specific intelligence information of the surveillance and recording capabilities of the surveillance cameras at the location in which the incident took place as well as any potential "blind spots" (locations that have infrequent staff presence and no electronic surveillance) to commit acts of violence and purveying contraband. Defendants also argue that once Plaintiff is allowed to view the video and learn the recording capabilities of WSP, it is unlikely that he will ever be allowed in that area again. ECF No. 88, at 2. Defendants propose that the video be shown to Plaintiff only during his law library access time and that if Plaintiff wishes to view the video again, he can notify staff and be given access to view it again during his scheduled law library time. *Id.*, at 4.

Plaintiff opposes Defendants' motion because their allegations of security concerns are conclusory and unsupported by any evidence. ECF No. 90. In addition, he states that he has already viewed the live surveillance in the sergeant's office at the WSP G Unit in January – April 2010. *Id.*, at 4-5. Plaintiff also explains that he is not allowed to possess the surveillance video where he is currently housed in the IMU. If Defendants mail the video to him, it would be shown to him by staff delivering the legal mail, and forwarded to the IMU property guard where it would be kept along with several other DVDs that have been produced to him in other litigation (*e.g., Florer v. Johnson-Bales,* Case No. C06-5561KLS/RJB). He would then be allowed to view the video on the "counselor's computer when needed." ECF No. 90, 3-4.

**DISCUSSION**

Fed.R.Civ.P. 26(c)(1) provides that a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: ... forbidding the disclosure or discovery." Fed.R.Civ.P. 26(c)(1)(A). Rule 26(c) authorizes the court to override the presumptively public

ORDER - 3

disclosure where good cause is shown. *San Jose Mercury News, Inc. v. U.S. Dist. Ct*., 187 F.3d 1096, 1103 (9th Cir.1999). To obtain a protective order, the party resisting discovery or seeking limitations must, under Rule 26(c), show good cause for its issuance. Specifically, the moving party must make a clear showing of a particular and specific need for the order. *Blankenship v. Hearst Corp*., 519 F.2d 418, 429 (9th Cir.1975). The decision to issue a protective order rests within the sound discretion of the trial court. *Wang v. Hsu*, 919 F.2d 130, 130 (10th Cir.1990).

It is not disputed that Plaintiff cannot possess the surveillance video while he remains in IMU and can only view the video on his counselor's computer. Therefore, the issue is what security concerns will be implicated if Plaintiff is allowed to possess the video when he is no longer housed in the IMU. Defendants rely on statements made by their attorney as to the security concerns related to the DVD to support their request for the protective order. In order for the Court to rule on their motion, any security concerns must come from a witness who has firsthand knowledge regarding these concerns and who can state, with specificity, why they have legitimate security concerns. A statement from defense counsel is not enough.

Because the Court is mindful of bona fide security concerns relating to the disclosure of surveillance videos, the Court shall defer ruling on Defendants' motion pending submission by Defendant of factually specific evidence of such bona fide security concerns.

Accordingly, it is **ORDERED:**

(1) The Clerk shall **strike** the present noting date of Defendants' motion for protective order (ECF No. 88) and **re-note** the motion for **June 29, 2012.** Defendants shall provide factually specific evidence of their security concerns on or before **June 29, 2012** or the Court will dismiss the motion.

ORDER - 4

(2) The Clerk shall send a copy of this Order to Plaintiff and counsel for Defendant.

**DATED** this  13th  day of June, 2012.

*Karen L. Strombom*
Karen L. Strombom
United States Magistrate Judge

ORDER - 5