1

2

3

4
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6

7
DENNIS FLORER,

                              Plaintiff,

          v.

8

9

10

11

12

13

14

15

16

17

18

19
DEVON SCHRUM, CARLA SCHETTLER,
ALAN WALTER, RICH MOSS, STEVE
SUNDBERG, RON KNIGHT, CHRIS
BOWMAN, STEVE SICLAIRE, STEVE
BARKER, ALAN KUNZ, JOHN
CAMPBELL, WILL PAUL, S. SUKERT,
KURT GRUBB, CANDICE GERMOAU,
JULIE SMITH, SANDY DIIMMEL, AL
MOSLEY, MILES LAWSON, RON
FRAKER, JOHN OYEN, DREW
WALTMAN, GARY PIERCE, MARK
KUCZA, DON HOLLBROOK, GERMAINE
BENSON, LINDA BELANGER, ELDON
VAIL, LAURA WYCKOFF-MEYER,
GUSTAVE MEZA, ALAN ROOKSTOOL,
EDUARDO MICHEL, (FNU) DANIEL,
ERIC JACKSON, and BERNIE WARNER,

                              Defendants.

No. C11-5135 BHS/KLS

**REPORT AND RECOMMENDATION**
**Noted:  March 1, 2013**

20

21

22

23

24

25

26
     Before the Court is Defendants' Motion for Summary Judgment.  ECF No. 102.   On

October 19, 2012, Defendants served Plaintiff with a Notice consistent with *Woods v. Carey,* 684

F.3d 934, 935, 940-41 (9th Cir. 2012) and in accordance with the holding of *Rand v. Rowland,*

154 F.3d 952, 962-63 (9th Cir. 1998).  ECF No. 103.  Plaintiff has filed no response to

Defendants' motion for summary judgment.  His failure to do so may be considered by the Court

as an admission that the Defendants' motion has merit.  CR 7(b)(2).

REPORT AND RECOMMENDATION - 1

Having reviewed the motion and balance of the record, the Court recommends that Defendants'

motion for summary judgment be granted.

## BACKGROUND

This case is proceeding on Plaintiff's Second Amended Civil Rights Complaint.  ECF

No. 84.  At the time of filing, Plaintiff Dennis Florer was an inmate incarcerated in the custody

of the Department of Corrections (DOC).  He alleged that various employees of the DOC

subjected him to multiple retaliatory transfers, infractions, and segregation.  He also alleged that

he was denied daily fresh laundry and that staff were deliberately indifferent to his safety.  *Id.*

Defendants move for summary judgment on the grounds that Plaintiff failed to exhaust his

administrative remedies, failed to allege actual constitutional violations, and because Defendants

are entitled to qualified immunity.  ECF No. 102.

## STANDARD OF REVIEW

The Court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(a).  The moving party has the initial burden of production to demonstrate the absence

of any genuine issue of material fact.  Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,* 263 F.3d

1070, 1076 (9th Cir. 2001) (en banc).  To carry this burden, the moving party need not introduce

any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the

absence of evidence to support the nonmoving party's case.  *Fairbank v. Wunderman Cato

Johnson*, 212 F.3d 528, 532 (9th Cir.2000).  A nonmoving party's failure to comply with local

rules in opposing a motion for summary judgment does not relieve the moving party of its

affirmative duty to demonstrate entitlement to judgment as a matter of law.  *Martinez v.

Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

REPORT AND RECOMMENDATION - 2

"If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)).  The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint.  *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).  A court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."  *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001).  This is true even when a party appears *pro se*.  *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007).

Where the nonmoving party is *pro se*, a court must consider as evidence in opposition to summary judgment all contentions "offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the party appearing pro se] attested under penalty of perjury that the contents of the motions or pleadings are true and correct."  *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (citation omitted), *cert. denied*, 546 U.S. 820, 126 S. Ct. 351, 163 L.Ed.2d 61 (2005).

### STATEMENT OF FACTS

**A.     Transfer to WSP (December 2009)**

According to Defendants, a recommendation was made for Plaintiff to be promoted from maximum custody to medium custody in late 2009.  ECF No. 102-2, Exhibit 2 (Supplemental

REPORT AND RECOMMENDATION - 3

Discovery Request No. 2 to D. Schrum, Answer to Interrogatory No. 1), p. 1.  When the classification change was processed, Plaintiff was promoted to close custody, rather than medium, because close custody is the step between max and medium and DOC staff thought it rational to promote him gradually.  *Id.*, Interrogatory No. 4, p. 2.

In his sworn complaint, Plaintiff alleged that the transfer to Washington State Penitentiary (WSP) close custody was in retaliation for his prior lawsuits against WSP and Defendant Shrum.  ECF No. 84, p. 8.

**B.    Infractions and Segregation (June/July 2010)**

On June 18, 2010, an Initial Serious Infraction Report was filed against the Plaintiff which accused hm of "strongarming/intimidation" of another inmate.  ECF No. 102-2, Exhibit 3, Declaration of Kimberly Reifsnider, p. 19.  Plaintiff was found guilty of this infraction and sanctioned to "3 days isolation applied, 20 days segregation applied, and 15 days loss of good conduct time applied."  ECF No. 102-2, Exhibit 3 (Reifsnider Decl.), p. 18.

Plaintiff alleged that while he was kept in Ad Seg, Defendants Siclaire, Kucza, Knight, Belanger, and Kunz denied him clean socks, t-shirt, underwear and towels, pursuant to DOC 320.255, that restricts the exchange of clean socks, t-shirts, underwear, and towels on a one for one basis to three days per week.  ECF No. 84, p. 18, ¶¶ 20, 21.

On June 26, 2010, Plaintiff had a disagreement with Correctional Officer (CO) Oyen regarding retention of a particular legal folder without it being processed.  ECF No. 102-2, Exhibit 3 (Reifsnider Declaration), Attachment B, pp. 30-44 (Infraction and Appeal documents for July 1, 2010 disciplinary hearing for 663 violation arising out of June 26, 2010 incident). According to CO Oyen's Staff Report, when CO Oyen advised Mr. Florer the file would have to be processed by unit property staff per policy, the Plaintiff began badgering him, calling him a

REPORT AND RECOMMENDATION - 4

coward and told him "You are part of my federal lawsuit."  CO Oyen believed that Plaintiff was

attempting to intimidate or coerce him with these statements and infracted Plaintiff (under WAC

137-25-030, 663) accordingly.  ECF No. 102-2, Exhibit 3 (Reifsnider Decl.), p. 37.

On July 3, 2010, Plaintiff was issued another Serious Infraction for "strongarming/

intimidation."  ECF No. 102-2, Exhibit 3 (Reifsnider Decl.), Attachment C, pp. 46-65 (Infraction

and Appeal Packets for July 1, 2010 disciplinary hearing for 663 violation arising out of June 26,

2010 incident).   According to CO Drew J. Waltman, Plaintiff demanded that he be allowed to

exchange more legal paperwork from boxes stored in the unit storage area.  He was told that he

had previously waived his yard for the day and had not previously asked staff to conduct the

requested action.  *Id.,* p. 52 (Serious Infraction Report).  In response Plaintiff again called staff

cowards, stated he would "make a demonstration" out of them and threatened to sue them if they

did not give into his demands for special treatment. *Id.*   Sgt. Waltman stated in his report that

Mr. Florer "has previously and continuously made demands from staff."  He stated that Mr.

Florer was in violation of WAC 663 "for knowingly and intentionally attempting to intimidate

me by threatening legal litigation in an attempt to coerce me to make staff remove him from his

cell, place him in the holding cell, and allow him to sort through legal work" although Mr. Florer

was well aware of the process for making these arrangements but had failed to do so.  *Id.*

According to Plaintiff, he was found guilty of both infractions and was sanctioned with

five to ten days isolation and the loss of 15 days good conduct time.  After he filed a personal

restraint petition, the Attorney General expunged both infractions and restored the lost good

conduct time.  However, Plaintiff claims that the infractions, guilty finding, and affirmation of

the guilty finding all violated his due process rights because the infractions were unsupported by

evidence.  He also claims that the infractions violated his right to Free Speech and were

REPORT AND RECOMMENDATION - 5

retaliatory because both infractions arose when he asked for access to his pending grievances and lawsuits against prison employees.  ECF No. 84, pp. 14-16.

**B.     August 20, 2010 Photocopies**

Plaintiff alleged that on August 20, 2010, Defendant Benson refused to photocopy his personal restraint petition.  Plaintiff claims that her failure to do so was in retaliation because she was mentioned in the petition.  ECF No. 84, pp. 16-17.  According to Defendant Benson, she was asked, but declined, to make photocopies for Plaintiff because she was waiting for clarification from other staff about her responsibility to make the copies.  ECF No. 102-3, Exhibit 4, Declaration of Germaine Benson, pp. 1-2, ¶¶ 4-6.  Counselor Benson was eventually told she did not have to make the copies.  *Id.*, p. 2, ¶ 7.

**C.     August 2010 Transfer to CBCC**

On July 27, 2010, it was recommended that Plaintiff be demoted back from close to maximum custody.  ECF No. 102-3, Exhibit 5, Supplemental Discovery Request No. 2 to S. Sundberg, Answer to Interrogatory No. 1, p. 1.  The recommendation was denied and Plaintiff was retained in close custody and transferred to DOC's only other close custody facility, Clallam Bay Corrections Center (CBCC). *Id.*, Interrogatory No. 2, p. 1; *also* Exhibit 6, Declaration of Kurt Grubb, p. 1, ¶ 4.  While at CBCC, Plaintiff was placed in segregation on November 29, 2010, because he admitted he had filed false complaints against a staff member who he had previously harassed in order to get her in trouble.  *Id.*, Exhibit 6 (Grubb Decl.), p. 1, ¶ 4. Based on this staff harassment, a previously expired facility seperatee order was reinstated and it was recommended that Offender Florer be transferred to protect staff.  *Id.*, pp. 1-2, ¶¶ 4-6.  Because Plaintiff remained classified as close custody, the available option was WSP, and this transfer took place on March 2, 2011.  *Id.*, p. 2, ¶ 6.

REPORT AND RECOMMENDATION - 6

According to Plaintiff, Defendants Barker, Kunz, and Campbell transferred him to Clallam Bay Correctional Center (CBCC) even though they knew that CBCC is a prohibited facility for Plaintiff due to staff seperatees.  After Defendant Paul and Sukert placed Plaintiff in Ad Seg on November 29, 2010 because of staff seperatee issues, Plaintiff appealed to Superintendent Fraker.  ECF No. 84, p. 12.  Plaintiff alleges that Defendants Grubb, Mosley, and Lawson kept him in Ad Seg from November 29, 2010 to February 16, 2011 and threatened to transfer Plaintiff back to WSP.  *Id.*

Plaintiff claims that his placements in Ad Seg at WSP and CBCC were in violation of his due process rights because during the time he was kept in Ad Seg, he was denied access to the law library, religious services, daily showers, clean clothing, recreation, additional food, education classes, prison jobs, and visitation.  Plaintiff also claims that his placements in Ad Seg at WSP and CBCC were in retaliation for the 200 grievances and 7 lawsuits that he has filed since 2004 against prison employees at WSP and CBCC.  ECF No. 84, p. 13.

**D.      March 6, 2011 Inmate Assault**

Plaintiff alleged that on March 2, 2011, Defendants Grubb, Germaou, Mosley, Lawson, Smith, Diimmel, and Campbell transferred him from CBCC Ad Seg E Unit to WSP's Gang Unit even though they knew of the high level of violence at the WSP Gang Unit and risk to Plaintiff's safety.  Plaintiff claims that this transfer was in retaliation for his filing 200 grievances and 7 lawsuits since 2004 against employees of WSP and CBCC.  Plaintiff alleged that he was thereafter assaulted by an inmate on March 6, 2011.  According to Plaintiff, Defendants Wyckoff-Meyer, Meza, Rookstool, Michel, Daniel, and John Does 1-2 failed to prevent the assault on him that took place directly in front of the east side of F gang unit and that there was no guard within the east side of the unit prior to and during the assault.  ECF No. 84, at 19-20.

REPORT AND RECOMMENDATION - 7

According to Defendants, Plaintiffs and another inmate engaged in a fist fight on March 6, 2011 and the fight was broken up.  ECF No. 102-3, Exhibit 7, Declaration of Gustavo Meza, p. 2, ¶ 5.  The fight occurred when officers had momentarily stepped into the adjoining side of the unit to conduct security checks as they often did.  *Id.*  These officers had no knowledge of any particular risk to Plaintiff when they moved to the adjoining room and did not abandon their posts as they were assigned to the whole unit and not one side in particular.  *Id.*, p. 2, ¶ 6; ECF No. 102-3, Exhibit 8, Declaration of Lori Wycoff-Meyer, pp. 1-2, ¶¶ 3-4; ECF No. 102-3, Exhibit 9, Declaration of Paul Daniel, pp. 1-2, ¶¶ 3-4; ECF No. 102-3, Exhibit 10, Declaration of Alan Rookstool, pp. 1-2, ¶¶ 3-4; and, ECF No. 102-3, Exhibit 11, Declaration of Eduardo Michel, pp. 1-2, ¶¶ 3-4.[1]

## DISCUSSION

**A.    Exhaustion**

The Prison Litigation Reform Act (PLRA) prohibits a prisoner from bringing an action "with respect to prison conditions" under § 1983 "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e.   "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought to court." *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 918-19 (2007).  Inmates must exhaust their prison grievance remedies before filing suit if the prison grievance system is capable of providing any relief or taking any action in response to the grievance.  *Booth v. Churner*, 532 U.S. 731, 740, 742 (2001).

The "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege

---

[1] The unsigned declarations of Alan Rookstool and Eduardo Michel were filed with Defendants' motion for summary judgment.  ECF No. 102, p. 5 n. 1.  Their signed signature pages were submitted under Praecipe filed on October 25, 2012.  ECF No. 104.

REPORT AND RECOMMENDATION - 8

excessive force or some other wrong." *Porter v. Nussle*, 543 U.S. 516, 532 (2002).  Exhaustion

under 42 U.S.C. § 1997e(a) is mandatory.  *Id.* at 524.

There is a grievance procedure available to inmates who are incarcerated in Washington's

prisons.  ECF No. 102-3, Exhibit 12 (Declaration of Clara Curl), p. 27.  Under this system, an

offender may file a grievance over a wide range of aspects of his incarceration, including: the

existence, application and/or lack of DOC policies, rules and procedures; the actions of staff;

retaliation by staff and prison conditions.  *Id.*  The system also provides a wide range of remedies

available to inmates, including possible restitution, administrative actions, changes in policy,

correction of records and agreement by department officials to remedy objectionable conditions.

*Id.*

Plaintiff is intimately familiar with this system, having filed 287 grievances during his

incarceration with DOC.  ECF No. 102-3, Exhibit 12 (Curl Decl.), Attachment C, pp. 84-89.  He

has previously filed many grievances regarding many of the same types of allegations as are at

issue here, namely retaliation and deliberate indifference.  *Id.*, p. 30, ¶ 11.  And, he has

exhausted remedies for a few of these claims, including his claim of retaliation for an August 20,

2010 incident in which a staff member refused to make copies for him and his March 6, 2011

allegation of deliberate indifference related to a fight in his living unit.  *Id.*

However, the Grievance Program Manager's review of Plaintiff's grievance records

shows that he failed to file grievances regarding the alleged: (1) December 16, 2009 retaliatory

transfer or denial of a custody promotion; (2) June 26 and July 3, 2010 retaliatory infractions; (3)

June 18, 2010 retaliatory placement and retention in segregation; (4) November 29, 2010

retaliatory placement and retention in segregation; and, (5) March 2, 2011 deliberately

indifferent and retaliatory transfer back to WSP.  ECF No. 102-3 (Curl Decl.), pp. 30-31, ¶ 12.

REPORT AND RECOMMENDATION - 9

These alleged acts of retaliation and deliberate indifference were grievable issues.  Because Plaintiff did not file grievances regarding them, Plaintiff failed to exhaust the administrative remedies available to him through the offender grievance program for these claims.

As Plaintiff failed to exhaust the available administrative remedies with regard to the foregoing claims, they must be dismissed without prejudice.  See *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) (citations omitted) ("[t]he proper remedy, where a prisoner has failed to exhaust non-judicial remedies, is dismissal of the claim without prejudice.")

**B.      Due Process – Classification/Placement in Ad Seg**

Plaintiff claims that his placements in Ad Seg at WSP and CBCC were in violation of his due process rights because during the time he was kept in Ad Seg, he was denied access to the law library, religious services, daily showers, clean clothing, recreation, additional food, education classes, prison jobs, and visitation.  ECF No. 84, p. 13.

The Fourteenth Amendment's procedural due process guarantee applies only when a constitutionally protected liberty interest is at stake.  *See Ingraham v. Wright*, 430 U.S. 651, 672-73 (1977).  Only certain actions taken by prison staff involve liberty interests.  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  Prisoners have "no liberty interest in freedom from state action taken within the sentence imposed," unless such action imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 480, 484.  The Ninth Circuit explicitly has found that administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence.  *Toussaint v. McCarthy*, 801 F.2d 1080, 1091-92 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).  Accordingly, the Ninth Circuit has previously agreed that a prisoner fails to a state a due process claim for placement in administrative segregation because such placement is "action

REPORT AND RECOMMENDATION - 10

taken within the sentence imposed.' *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (quoting *Sandin*, 515 U.S. at 480).  Additionally, the Ninth Circuit has also determined that the imposition of administrative segregation did not "constitute atypical and significant hardship in relation to the ordinary incidents of prison life."  *See Richardson v. Runnels*, 594 F.3d 666, 672 (9th Cir. 2010).

Similarly, an inmate has no Constitutional right to a particular classification or custody level.  *Sandin* 515 U.S. at 476; *see also, Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007); *Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998); *Duffy v. Riveland*, 98 F.3d 447, 457 (9th Cir. 1996); *Smith v. Noonan*, 992 F.2d 987 (9th Cir. 1993) (Washington state inmates do not have a protected liberty interest in remaining in the general population.); *In re Dowell,* 100 Wn.2d 770, 773, 674 P.2d 666 (1984) (The Washington State Supreme Court confirms that transfer among various security classifications is within the expected terms of confinement for a Washington prisoner, and thus is not protected by the due process clause).

Plaintiff has no liberty interest in his classification or placement in segregation.  In addition, there is no evidence that Plaintiff was subject to any constitutional deprivation while in segregation that constituted an atypical and significant hardship in relation to the ordinary incidents of prison life.  Accordingly, the undersigned recommends that Defendants are entitled to summary judgment on Plaintiff's due process claims arising out of his classification or placement in segregation.

**C.     Due Process – June 26 and July 3 Infractions**

Plaintiff claims that Defendants Defendants Oyen, Waltman, Pierce, Kucza, and Hallbrook violated his due process rights when they participated in the infraction process for his

June 26, 2010 and July 3, 2010 infractions.   ECF No. 84, p. 24.  Plaintiff claims these infractions amounted to due process violations because he was infracted, found guilty and the guilty finding affirmed without sufficient evidence.  *Id.*

In the prison disciplinary context, due process requires "some evidence" in the record to support the decision.  *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985).  Determination of whether the "some evidence" standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board."  *Id.*, at 455 (emphasis added).  "The *Hill* standard is minimally stringent."  *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987); *see also Bruce v. Ylst*, 351 F.3d 1283, 1287-88 (9th Cir. 2003); *Toussaint v. McCarthy*, 926 F.2d 800, 802-03 (9th Cir. 1990); *Bostic v. Carlson*, 884 F.2d 1267, 1269-70 (9th Cir. 1989); *Jancsek v. Or. Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987).

The infractions were supported by written staff testimony.  ECF No. 102-2, Exhibit 3, (Reifsnider Decl.), Attachment B, pp. 30-44; Attachment C, pp. 46-63.  In the June 26, 2010 infraction, Correctional Officer Oyen wrote that Plaintiff began badgering him, calling him a coward and threatening to sue him in order to attempt to gain special treatment.  *Id,* Attachment B, p. 37.  CO Oyen testified that he believed Plaintiff was attempting to intimidate or coerce him into providing the plaintiff access to property without it being properly searched first.  *Id*. Plaintiff provides no evidence to the contrary.

With regard to the July 3, 2010 infraction, Sergeant Waltman's report stated that Plaintiff demanded staff to ignore the processes in place and allow him special privileged access to his property.  ECF No. 102-2, Exhibit 3 (Reifsnider Decl.), Attachment C, p. 52.  In response

REPORT AND RECOMMENDATION - 12

Plaintiff again called staff cowards, stated he would "make a demonstration" out of them and threatened to sue if they did not give into his demands for special treatment. *Id.* Sgt. Waltman's report stated that he believed Plaintiff was attempting to threaten or coerce him into letting Plaintiff out of his cell with these statements. *Id.* Plaintiff provides no evidence to the contrary.

The testimony of CO Oyen and Sgt. Waltman constitute "some evidence" that Plaintiff was using "… intimidation or coercion against any person" as proscribed by WAC 137-25-030 (663). Accordingly, Plaintiff has shown no due process violation for these defendants' participation in the infraction process. Thus, Defendants Oyen, Waltman, Piece, Kuzca, and Hallbrook are entitled to summary judgment on Plaintiff's claims relating to these infractions.

**C.     First Amendment**

Plaintiff also alleges that his First Amendment rights were violated by Defendants Oyen, Waltman, Piece, Kuzca, and Hallbrook  because they participated in the above-described infraction process for his June 26, 2010 and July 3, 2010 infractions. ECF No. 84, at 25.

Prison inmates retain their First Amendment rights, subject to limitations justified by reasonable penological interests. *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987); *also Pell v. Procunier*, 417 U.S. 817, 822 (1974). An inmate's right to free speech is impinged only if a regulation affecting speech is not rationally related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. at 89. Four factors are considered in determining whether a regulation is reasonably related to a legitimate penological interest, including: (1) whether there is a valid, rational connection between the regulation and the interest used to justify the regulation; (2) whether prisoners retain alternative means of exercising the right at issue; (3) the impact the requested accommodation will have on inmates, prison staff, and prison resources generally; and (4) whether the prisoner has identified easy alternatives to the regulation which

REPORT AND RECOMMENDATION - 13

could be implemented at a minimal cost to legitimate penological interests. *Id.* at 89-91. The first of these factors is the most important. *See Prison Legal News v. Lehman*, 397 F.3d 692, 699 (9th Cir. 2005).

Legitimate penological interests include, *inter alia*, "the preservation of internal order and discipline" as well as "the maintenance of institutional security." *Procunier v. Martinez*, 416 U.S. 396, 412 (1974), *limited by Thornburgh v. Abbott*, 490 U.S. 401 (1989).

Defendants argue that there was a legitimate interest in prohibiting Plaintiff's attempt to control staff actions through his use of angry, intimidating, coercive statements because it is within the institution's legitimate interests to limit that behavior and protect all inmates. Defendants are correct. Prison systems are expected to maintain the safety and security of their institutions, including through enforcement of disciplinary rules. *Bell v. Wolfish*, 441 U.S. 520, 546, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). "[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of . . . convicted prisoners . . . ." *Id.* The establishment and enforcement of rules requiring respect for authority enhances security within the prison. *Ustrak v. Fairman*, 781 F.2d 573, 580 (7th Cir. 1986) ("The level of violence in American prisons makes it imperative that the authorities take effective steps to prevent provocation.") *Id.* at 580.

Plaintiff also had an alternative means of expressing his distaste for the actions of prison staff. For example, he could have followed procedure and properly submitted a grievance, sent a kite or taken any number of other actions. Regarding both disciplinary charges, prison staff did not have a viable alternative to achieve their goals of safety and security because intimidation and coercion cannot be allowed in a prison setting. In addition, Washington Administrative

REPORT AND RECOMMENDATION - 14

1    Code requires these officers to report and pursue infractions whenever they perceive a violation.

2    *See* WAC 137-28-270 ("In the event of a serious infraction, the staff member who discovers such

3    violation *shall* prepare and submit an infraction report.") (emphasis added).  This mandate

4    militates in favor of the "conclusion that a reasonable officer would find that conduct

5    constitutional."  *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994).

6        Viewing the facts in the light most favorable to Mr. Florer, those facts reflect that Mr.

7    Florer's own behavior threatened the safety and security of the environment and when the prison

8    staff took steps to stop his behavior, those steps served a legitimate penological interest.

9    Because Mr. Florer has failed to raise a question of fact as to this issue, Oyen, Waltman, Piece,

10   Kuzca, and Hallbrook  are entitled to summary judgment on Mr. Florer's claim that they violated

11   his First Amendment rights because they participated in the infraction process for his June 26,

12   2010 and July 3, 2010 infractions.

**D.    Lack of Daily Laundry Service**

14       To state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) the

15   defendant must be a person acting under color of state law, and (2) the defendant's conduct

16   must have deprived the plaintiff of rights, privileges or immunities secured by the Constitution or

17   laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on*

18   *other grounds; Daniels v. Williams*, 474 U.S. 327, 330-31 (1986).  Implicit in the second element

19   is a third element of causation. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S.

20   274, 286-87 (1977).  When a plaintiff fails to allege or establish one of the three elements, his

21   complaint must be dismissed.  The Civil Rights Act, 42 U.S.C. § 1983, is not merely a "font of

22   tort law."  *Parratt*, 451 U.S. at 532.  That the plaintiff may have suffered harm, even if due to

REPORT AND RECOMMENDATION - 15

another's negligent conduct, does not in itself necessarily demonstrate an abridgment of

constitutional protections.  *Davidson v. Cannon*, 474 U.S. 344, 347 (1986).

Plaintiff alleges that Defendants Kunz, Belanger, Knight, Bowman, Siclare, Vail, and

Warner violated his Eighth Amendment right to be free of cruel and unusual punishments by

promulgating and enforcing a policy which provided for clean clothing and towel exchanges

only three times per week.  ECF No. 84, p. 26.

"The Constitution 'does not mandate comfortable prisons.'"  *Farmer v. Brennan*, 511

U.S. 825, 832 (1994).  For there to be an Eighth Amendment violation, two requirements must

be met: "First, the deprivation alleged must be, objectively, 'sufficiently serious[;]' a prison

official's act or omission must result in the denial of 'the minimal civilized measure of life's

necessities'," and second "a prison official must have a 'sufficiently culpable state of mind.'"  *Id.*

at 834 (citations omitted).  Prison officials must provide prisoners with adequate "food, clothing,

shelter, sanitation, medical care, and personal safety."  *Toussaint v. McCarthy*, 801 F.2d at 1107.

Plaintiff appears to contend that being provided fresh clothing three times weekly violates

the minimal civilized measure of life's necessities.  However, as noted by Defendants, inmates

do not even have an Eighth Amendment right to bathe three times a week.  *See Davenport v.*

*DeRobertis*, 844 F.2d 1310, 1316 (7th Cir. 1988).  There is no authority establishing that the

three times weekly laundry service provided to Plaintiff was insufficient or unconstitutional.

Therefore, Defendants are entitled to summary judgment on this claim.

**E.**     **Photocopies – August 20, 2012**

Plaintiff alleges that on August 20, 2010, Defendant Benson refused to photocopy his

personal restraint petition.  Plaintiff claims that her failure to do so was in retaliation because she

was mentioned in the petition.  ECF No. 84, pp. 16-17.  Defendant Benson states that she was

REPORT AND RECOMMENDATION - 16

asked, but declined, to make photocopies for Plaintiff because she was waiting for clarification from other staff about her responsibility to make the copies.  ECF No. 102-3, Exhibit 4, (Benson Decl.), pp. 1-2, ¶¶ 4-6.  Counselor Benson was eventually told she did not have to make the copies.  *Id.*, p. 2, ¶ 7.

According to Counselor Benson, after Plaintiff gave her the documents, she flipped through the pages to ensure that they met the policy definition for legal copies.  However, after her review she was unsure whether the papers met the definition in the policy.  ECF No. 102-3, Exhibit 4 (Benson Decl.), pp. 1-2, ¶ 4.  She contacted the institution's legal liaison staff, returned the documents to Plaintiff, and later learned that the legal liaison staff did not believe the document was supposed to be copied.  *Id.,* p. 2, ¶ 5-6.  Therefore, Counselor Benson did not make the copies Plaintiff requested.  *Id.*, p. 7.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).  On "summary judgment, the plaintiff must demonstrate there is a triable issue of material fact on each element of his claim, as opposed to merely alleging facts sufficient to state a claim."  *Brodheim v. Cry*, 584 F.3d 1262, 1268 n. 3 (9th Cir. 2009).

For the purposes of this motion, Counselor Benson does not contest that Plaintiff has alleged a "protected activity."  However, there is no evidence of a constitutionally unlawful "adverse action" that any conduct by Counselor Benson was "because of" protected activity, that any conduct of this chilled Plaintiff's exercise of First Amendment rights, or that the refusal did

REPORT AND RECOMMENDATION - 17

not advance legitimate correctional goals.  Plaintiff has only alleged that Counselor Benson told him she could not copy these documents.  According to Counselor Benson, her concern about copying these documents came from their form and not their content. ECF No. 102-3, Exhibit 4, (Benson Decl.), pp. 1-2, ¶ 4.

As stated in *Rhodes* the alleged adverse action must be "the result" of protected activity. *Rhodes*, 408 F.3d at 567.  For purposes of this motion, Defendants do not dispute that Plaintiff was engaged in protected activity. ECF NO. 102, p. 20.  Viewing the facts in the light most favorable to Plaintiff, however, all that occurred is that Counselor Benson returned Plaintiff's documents to him without copying them.  Finally, there is no evidence that Plaintiff's First Amendment rights were, in any way, chilled.  As he notes himself, he has filed "about 200 grievances" and at least ten lawsuits against DOC and staff.  ECF No. 84, p. 13.  Nor would the conduct at issue chill or silence a person of ordinary firmness from future First Amendment activities.  See *Rhodes*, 408 F.3d at 568.

Accordingly, Defendant Benson is entitled to summary judgment on this claim.

**F.    March 6, 2011 Inmate Assault**

Plaintiff alleges that on March 2, 2011, Defendants Grubb, Germaou, Mosley, Lawson, Smith, Diimmel, and Campbell transferred him from CBCC Ad Seg E Unit to WSP's Gang Unit even though they knew of the high level of violence at the WSP Gang Unit and risk to Plaintiff's safety.  Plaintiff claims that this transfer was in retaliation for his filing 200 grievances and 7 lawsuits since 2004 against employees of WSP and CBCC.  Plaintiff alleges that he was thereafter assaulted by an inmate on March 6, 2011.  According to Plaintiff, Defendants Wyckoff-Meyer, Meza, Rookstool, Michel, Daniel, and John Does 1-2 failed to prevent the

REPORT AND RECOMMENDATION - 18

assault on him that took place directly in front of the east side of F gang unit and that there was no guard within the east side of the unit prior to and during the assault.  ECF No. 84, at 19-20.

According to Defendants, Plaintiff and another inmate engaged in a fist fight while the Defendant Officers were in an adjoining room on the other side of the unit conducting security checks.  Correction Officer Gustavo Meza states that the fight was broken up.  ECF No. 102-3, Exhibit 7 (Meza Decl.), p. 13, ¶ 5.

"Prison officials have a duty to take reasonable steps to protect inmates from physical abuse."  *Hoptowit v. Ray*, 682 F.2d 1237, 1250 (9th Cir. 1982); *see also Farmer v. Brennan*, 511 U.S. at 833; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005).  In order for a plaintiff to establish a violation of this duty, he must show that officers were "deliberately indifferen[t]" to serious threats to his safety.  *See Farmer*, 511 U.S. at 834.  To establish this deliberate indifference, the plaintiff must show that the officers "[knew] of and disregard[ed] an excessive risk to inmate . . . safety," namely that the officers both were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and drew the inference.  *See Farmer*, 511 U.S. at 837; *see also Simmons v. Navajo County*, 609 F.3d 1011, 1017 (9th Cir. 2010).  Officers avoid liability by presenting evidence that they lacked knowledge of the risk or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk.  *See Farmer,* 511 U.S., at 844-45; *Gibson, 290 F.3d at 1187-88*; *see generally Berg v. Kincheloe*, 794 F.2d 457, 462 (9th Cir. 1986).

Defendants Gustavo Meza, Lori Wycoff-Meyer, Paul Daniel, Alan Rookstool, and Eduardo Michel state that they had no knowledge of any particular risk to Plaintiff when they moved to the adjoining room to perform security checks.  They also state that they did not abandon their posts as they were assigned to the whole unit and not one side in particular.  ECF

REPORT AND RECOMMENDATION - 19

No. 102-3, Exhibit 7 (Meza Decl.), p. 2, ¶ 6; ECF No. 102-3, Exhibit 8 (Wycoff-Meyer Decl.), pp. 1-2, ¶¶ 3-4; ECF No. 102-3, Exhibit 9 (Daniel Declaration), pp. 1-2, ¶¶ 3-4; ECF No. 102-3, Exhibit 10 (Rookstool Declaration), pp. 1-2, ¶¶ 3-4; and, ECF No. 102-3, Exhibit 11 (Michel Declaration), pp. 1-2, ¶¶ 3-4.  The officers state that, prior to this incident, they had no particular information about either Plaintiff or the other inmate that would have led them to predict this fight or that these inmates would be more prone to fighting each other.  They had no reason to suspect that either Plaintiff or the other inmate was at any higher risk for violence. *Id.*

Plaintiff provides no evidence to the contrary.  Without knowledge of risk there can be no deliberate indifference to Plaintiff's safety.  Accordingly, Defendants are entitled to summary judgment on this claim.

### CONCLUSION

For the reasons stated above, the undersigned recommends that Defendants' motion for summary judgment (ECF No. 102) be **GRANTED** and Plaintiff's claims against Defendants **dismissed with prejudice except** Plaintiff's claims related to:  (1) December 16, 2009 transfer and denial of custody promotion; (2) June 26, 2010 and July 3, 2010 infractions; (3) June 17, 2010 placement and retention in segregation; (4) November 29, 2010 placement and retention in segregation; and, (5) March 2, 2011 transfer back to WSP., which should be **dismissed without prejudice for failure to exhaust administrative remedies.**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140

REPORT AND RECOMMENDATION - 20

1    (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the

2    matter for consideration on **March 1, 2013,** as noted in the caption.

3

4         **DATED** this  13th   day of February, 2013.

5

6                                              Karen L. Strombom
                                              United States Magistrate Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION - 21